# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PROGRESSIVE DIRECT )
INSURANCE COMPANY, )
                                      )
    Plaintiff, )
                                      )
             v. )    Civil Action No. 08-38 Erie
                                      )
SHARON M. GALLOWAY, Administrator )    Judge Sean J. McLaughlin
of the ESTATE OF STEVEN D. )
GALLOWAY, deceased. )
                                      )
    Defendant. )

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

This matter is before the Court upon cross-motions for summary judgment.

### I. BACKGROUND

On July 7, 2007, Steven Galloway was a passenger in a 1992 Chevy Lumina which was owned and operated by his brother, William. A single vehicle accident ensued and Steven was killed. At the time of the accident, the Galloways maintained two insurance policies provided by Plaintiff Progressive Insurance Company ("Progressive").

One policy, bearing policy number 14788818-1, listed Sharon Galloway as "First Named Insured" and listed David Galloway under "Drivers and household residents." (Complaint, Exhibit A). This policy covered four vehicles: a 1998 Ford Winstar, a 1994 Ford Bronco, a 1991 Ford Mustang GT/Cobra GT, and a 1992 Plymouth Voyager. It provided, *inter alia*, underinsured motorist coverage in the amount of $50,000.00 per person/$100,000.00 per accident. The policy permitted stacking and, therefore, provided up to $200,000.00 in underinsured motorist coverage.

The other policy, bearing policy number 14673051-2, provided, *inter alia*, liability coverage and listed the 1992 Chevy Lumina and a 1993 Dodge Dakota as covered vehicles. (Complaint, Exhibit B). Sharon Galloway was listed as the "First Named Insured," with her husband, David Galloway, and both William and Steven listed as "Drivers and household residents." Subsequent

to the accident, Sharon Galloway, as administrator of the estate, recovered the limits of the liability coverage under policy number 14673051-2.

Sharon Galloway subsequently submitted a claim for underinsured motorist coverage under policy number 14788818-1. Progressive denied the claim based upon the following language contained in the policy:

> An "**underinsured motor vehicle**" does not include any vehicle or equipment:
>
> a. owned by **you** or a **relative** or furnished or available for the regular use of **you** or a **relative**.

(Complaint, Exhibit A, p. 12). The second exclusion relied upon by Progressive in denying coverage provides as follows:

> **EXCLUSIONS** - read the following exclusions carefully. If an exclusion applies, coverage will not be afforded under this Part III. Coverage under this Part III will not apply:
>
> \* \* \* \* \* \* \*
>
> 1. To **bodily injury** sustained by any person using or **occupying**:
>
>   b. a motor vehicle that is owned by or available for the regular use of **you** or a **relative**. This exclusion does not apply to a **covered auto** that is ensured under this part III.

(Complaint, Exhibit A, p. 13).

On February 1, 2008, Progressive instituted the instant action by filing a Complaint for Declaratory Judgment. Progressive requests a declaration that it has no duty to pay underinsured motorist benefits to Steven Galloway's estate under policy number 14788818-1. On June 16, 2006, Progressive filed a motion for summary judgment. On July 17, 2006, Galloway filed a cross-motion for summary judgment. This matter is ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

2

material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56©. In order to withstand a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [each] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In evaluating whether the non-moving party has established each necessary element, the Court must grant all reasonable inferences from the evidence to the non-moving party. Knabe v. Boury Corp., 114 F.3d 407, 410, n.4 (3d Cir. 1997) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. (quoting Matsushita, 475 U.S. at 587).

### III. Discussion

The underlying facts are undisputed. The crux of this case concerns the operative effect of the two exclusionary provisions, commonly referred to as "family car exclusions," contained in Progressive policy number 14788818-1. Family car exclusions purport to "exclude[] coverage for an otherwise insured individual when that person is occupying a separately owned vehicle that is not insured under the subject policy." Prudential Prop. and Cas. Ins. Co. v. Colbert, 813 A.2d 747, 750 (Pa. 2002). The parties agree that, in the absence of the family car exclusions, Steven Galloway's estate would be eligible to recover underinsured motorist ("UIM" benefits). Moreover, the Defendant concedes that there is no ambiguity in the exclusionary language. See, e.g., Burstein v. Prudential Property and Cas. Ins. Co., 809 A.2d 204, 206 (Pa. 2002) (noting that courts generally must "give plain meaning to a clear and unambiguous contract provision"). The Defendant contends, however, that the exclusions violate public policy and therefore should not be enforced. Id. at 206 (recognizing that courts will not enforce an otherwise valid contractual provision where "to do so would be contrary to a clearly expressed public policy."). Specifically, Defendants argue that the exclusions in the Progressive policy run afoul of the public policy underlying the Motor Vehicle

3

Financial Responsibility Law, 75 Pa. Cons. Stat. §§ 1701-1799.7 ("MVFRL"). Prior to addressing the Defendants public policy argument in this case, a brief review of the current state of the law in Pennsylvania relative to family car exclusions is appropriate.

In Paylor v. Hartford Ins. Co., 640 A.2d 1234 (Pa. 1994), the Pennsylvania Supreme Court examined the validity of a family car exclusion under the MVFRL and concluded that the exclusion was enforceable. In Paylor, Betty Dymond was a passenger in a motor home operated by her husband, Fred Dymond, when the motor home was involved in a single-vehicle accident that resulted in the deaths of both Betty and Fred. Paylor, 640 A.2d at 1235. At the time of the accident, the motor home was insured under a policy issued by Foremost Insurance Company that listed both Fred and Betty Dymond as named insureds. Id. The Dymonds maintained a separate insurance policy, issued by Hartford Insurance Company, that covered three other vehicles owned by the Dymonds. Fred and Betty were listed as named insureds under that policy as well. Id.

The Dymonds' daughter (and administratrix of their estate), Jane Paylor, recovered the limits of the liability coverage available under the policy issued by Foremost Insurance Company. Paylor then sought to recover underinsured motorist benefits under the policy issued by Hartford. Id. Hartford denied the claim based upon the existence of a family car exclusion in the policy provisions, prompting a declaratory judgment action from the estate. Id.

The Pennsylvania Supreme Court prefaced its analysis by noting that, because the language contained in the family car exclusion was clear and unambiguous, the exclusion must be enforced under Pennsylvania law unless it is violative of public policy. Id. at 1235-36. In the context of the MVFRL, the Paylor Court stated that:

> [t]he repeal of the No-Fault Act and the enactment of the MVFRL reflected a legislative concern for the spiraling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways. The legislative concern for the increasing cost of insurance is the public policy that is to be advanced by statutory interpretation of the MVFRL.

Paylor, 640 A.2d at 1235-36. The Court acknowledged that whether an exclusion is violative of public policy is "dependent upon the factual circumstances presented in each case." Id. at 1240.

4

Central to the Court's analysis in Paylor was an examination of Marroquin v. Mutual Benefit Ins. Co., 591 A.2d 290 (Pa. Super. 1991), and Linder v. State Farm Mutual Auto Ins. Co., 364 N.W.2d 481 (Minn. 1985), wherein the courts reached opposite conclusions with respect to the enforceability of family car exclusions.

In Marroquin, Jose Marroquin suffered an injury when he was struck by an automobile owned and operated by his brother, Jorge Marroquin. Marroquin, 591 A.2d at 291. At the time of the accident, both Jose and Jorge resided with their parents. Id. Jorge was the named insured on an insurance policy that covered only the vehicle involved in the accident, issued by Mutual Benefit Insurance Company. Under the liability provisions of his brother's Mutual Benefit policy, Jose received $15,000 in coverage. Id. Jose then sought underinsured motorist benefits from his parent's separately maintained insurance policy. That policy, also issued by Mutual Benefit, provided insurance coverage on his parents' vehicles, but not Jorge's, and named both parents as insureds. Although the parents' policy extended coverage to "family members," it contained a family car exclusion which purported to exclude underinsured motorist coverage for any vehicle "[o]wned by or furnished or available for the regular use of you or any 'family member'" and not listed within the terms of the policy. Id. at 292. Because Jorge's vehicle was "owned by" a family member and not insured under the parents' policy, Mutual Benefit denied Jose's claim for underinsured motorist benefits on his parents' policy.

Jose brought a claim seeking benefits under his parents' policy, and the court held that the family car exclusion was "invalid and unenforceable as being void as against public policy." Id. at 297. The Marroquin court relied heavily on the reasoning of a Minnesota state court case, DeVille v. State Farm Mutual Automobile Ins. Co., 367 N.W.2d 574 (1985), which held that under Minnesota law, a family car exclusion was presumed to be invalid unless "the plaintiff is attempting to convert underinsured motorist coverage (first-party coverage) into liability coverage (third-party coverage)." Following this reasoning, the Marroquin court stated:

5

> In the instant case, there was no question that two insurance policies were involved. The parents' insurance agreement clearly stated that it did not extend liability coverage to any vehicle that was not a "covered vehicle" and was owned by a family member. Jorge Marroquin's individual insurance policy was therefore responsible for liability damages. Under the reasoning employed in DeVille, the insurance coverage in the instant case is identical to that enjoyed by appellant in DeVille. When describing DeVille's insurance the pivotal language used by the Minnesota court is that "[t]his is 'first-party coverage,' and it should follow her wherever she may be located when injured." In the instant case, there is no dispute that appellant's underinsured motorist coverage followed him to whatever point that he may have been injured. The only bar to his recovery was that his brother owned the vehicle that injured him. Under the facts of this case, such a bar was not justified as its purpose was not to convert underinsured motorist coverage into liability coverage.

Marroquin, 591 A.2d at 297 (internal footnotes and citations omitted).[1]

In Linder, the plaintiff was struck by a vehicle owned by her father and operated by her brother, all of whom resided in the same household. Linder recovered liability benefits under the policy that her father carried on the pickup truck. She then sought underinsured motorist benefits from two separate policies that her father carried on two additional vehicles that he owned. Each policy contained a family car exclusion for "bodily injury to an insured while occupied or through being struck by a land motor vehicle owned by the named insured or any resident of the same household if such vehicle is not [named in the policy]." Linder, 364 N.W.2d at 482.

In upholding the exclusion, the court noted that:

> The insureds in Myers and Eisenschenk and here were similarly situated. In each case, it was within that insured's power to purchase sufficient liability coverage to adequately protect himself and his

---

[1] In seeking to invalidate the family car exclusion at issue here, Defendants rely primarily upon Marroquin:

| | |
|---|---|
| The Court: | All right . You have put all of your eggs in the Marroquin basket, is that right – most of them? |
| Counsel: | A lot of them, your Honor. |

(Hearing Transcript, p. 3).

6

other insureds. Each sought, instead, to look to his underinsured motorist coverages when liability coverage was exhausted. However, in each case, an exclusionary clause prevented him from doing so.

We are compelled to extend the holdings in Myers and Eisenschenk to this case. Linder was involved in a one-car accident. The liability coverage was insufficient. To allow Linder to avoid the exclusionary clauses in the policies would be to allow her to convert inexpensively-purchased underinsured motorist coverage into liability coverage. This would be contrary to the courts' decisions in Myers and Eisenschenk.

Id. at 483. The court also rejected Linder's contention that, because she was a minor and therefore incapable of purchasing liability coverage on her own behalf, the exclusionary clause violated public policy. Id. ("While we are not insensitive to the position in which Linder is placed, we are unable to rescue her from the decisions made by her family regarding the limits of liability insurance purchased.").[2]

The Paylor court concluded that the facts in its case "more closely resembled the factual scenario in Linder" because "Mrs. Dymond was a named insured under both the . . . policy which covered the motor home involved in the single-vehicle accident and the . . . policy covering the three

---

[2] Significantly, the Marroquin court distinguished Linder and implicitly suggested that, if presented with those facts, the result in its case would be different:

> Linder was not denied underinsured motorist coverage because she was not the "named insured" and did not pay premiums. Linder was denied coverage because all three insurance policies involved were in the name of the *same* insured, her father. Since that was the case, if the "Family Car Exclusion" were to be invalidated, nothing would prevent the father from converting his inexpensive underinsured motorist coverage into liability coverage. Indeed, Linder supports the proposition that it is the type of coverage that is of paramount importance. Appellant was denied coverage, *just as her father (the Named Insured) would have been had he been* the injured party.

Marroquin, 591 A.2d at 458 (emphasis in original).

7

other vehicles owned by the Dymonds." Paylor, 640 A.2d at 1240. It explained its basis for upholding the exclusion as follows:

> Unlike Marroquin, and as in Linder, all three of the policies under which Mrs. Dymond's estate sought to recover benefits were in the name of the same insureds - Betty Dymond and Fred Dymond. We conclude that the facts of this case fall with the limited exception recognized in Marroquin which permits the family car exclusion to be enforced in cases where the plaintiff is attempting to covert underinsured motorist coverage into liability coverage. The application of this limited exception in this case serves to promote the legislative intent of the MVFRL and the expression of public policy articulated in the case law of Pennsylvania.

Id. at 1241.

In Prudential Property and Casualty Ins. Co. v. Colbert, 813 A.2d 747 (Pa. 2002), the plaintiff, Adam Colbert, suffered injuries as a result of an automobile accident that he sustained while driving his car. At the time of the accident, Adam resided with his parents. He insured his own vehicle under a policy issued by State Farm Insurance Company. Id. at 749. His parents owned three automobiles, all of which were insured under a single policy with Prudential Property and Casualty. Id.

Adam collected liability insurance benefits from the driver responsible for the accident. Thereafter, he recovered the maximum amount of UIM coverage that he was entitled to under his own policy with State Farm. Adam then made a claim for additional UIM benefits from his parents' policy with Prudential. Prudential denied coverage, inter alia, on the basis of an "other household vehicle" exclusion which excluded coverage "of a named insured or household resident for accidents occurring while the insured or household resident was using another vehicle not insured under the Prudential policy." Id. Prudential filed a declaratory judgment action in federal district court and the district court held that the household exclusion barred coverage. The Colberts appealed to the Third Circuit, and the Third Circuit certified the following question to the Pennsylvania Supreme Court for review: "[W]hether the 'other household vehicle' exclusion contained in the Prudential policy is void as against the public policy of the MVFRL." Id. at 748-49.

In upholding the exclusion, the Colbert Court relied upon its previous decision in Burstein

8

in which the Court held that the family car exclusion "functions to protect insurers against forced underwriting of unknown risks that insureds have neither disclosed nor paid to insure. Thus, operationally, insureds are prevented from receiving gratis coverage, and insurers are not compelled to subsidize unknown and uncompensated risks by increasing insurance rates comprehensively." Id. at 753. In rejecting the public policy challenge to the family car exclusion, the Colbert Court observed that:

> It is undisputed that Adam Colbert purchased UIM coverage on his vehicle from State Farm and actually received the maximum amount payable under that coverage. Thus, *Adam received the UIM coverage for which he paid.* Nonetheless, Adam also attempted to recover UIM benefits from his parents' insurance policy with Prudential. Neither Adam nor his parents paid Prudential to insure his car; indeed, the "other household vehicle exclusion" in Prudential's policy expressly excluded such vehicles from coverage. Likewise, there is nothing to suggest that Adam or his parents ever disclosed Adam's vehicle to Prudential. Under these facts, voiding the "other household vehicle exclusion" would force Prudential into the same predicament as was the insurer in Burstein: it would be compelled to underwrite unknown risks that the insureds neither disclosed nor paid to insure. In addition, Adam would stand to receive gratis coverage or, more accurately, *double coverage*.

Id. at 754 (emphasis in original). The Court also echoed the Paylor court's concern that an insured could receive insurance coverage far in excess of what he paid for were the exclusion to be voided:

> Moreover, voiding the "other household vehicle" exclusion would empower insureds to collect UIM benefits *multiplied by the number of insurance policies on which they could qualify as an insured*, even though they only paid for UIM coverage on one policy. As a result, insureds would receive benefits far in excess of the amount of coverage for which they paid, as would be the case here were we to void the exclusion.

Id. at 755 (emphasis in original).

Most recently, the Third Circuit had the occasion to address the viability of a family car exclusion in Nationwide Mutual Ins. Co. v. Riley, 352 F.3d 804 (3rd Cir. 2003). In Riley, the plaintiff, Pamela Riley, suffered an injury when a third party vehicle struck her vehicle. At the time of the accident, Pamela's vehicle was insured under a policy issued by Nationwide. The same insurance agent who had issued Pamela's policy to her also issued a policy to Pamela's father, with

9

whom she resided, which covered his household vehicles. Riley, 352 F.3d at 805-06. Pamela subsequently recovered the liability limit on the third party's insurance policy and the maximum in underinsured motorist benefits available under her own policy with Nationwide. Id. at 806. She then sought additional UIM benefits from Nationwide under her father's policy. Nationwide denied the claim on the basis of a household exclusion clause that excluded coverage for "[b]odily injury suffered while occupying a motor vehicle owned by you or a relative but not insured for Underinsured Motorist coverage under this policy." Id.

The Riley Court found the facts in Colbert "strikingly similar" with the exception that, unlike the insurance company in Colbert, Nationwide was not being forced to underwrite an unknown risk since it insured both Pamela and her father. Id. The Court did not find this distinction material, however, noting:

> The fact that the two vehicles were insured by the same insurance company does not, however, turn the tide. Even though the Colbert Court noted as a relevant fact that the insurer did not know of Adam's vehicle, that fact does not appear critical to its analysis. Upholding the household exclusion clause in this case will further the policy goals of the MVFRL of containing insurance costs, and therefore does not counsel differently than Colbert. In exchange for a reduction in insurance premiums, Arthur Riley chose to exclude the other cars in his household from his underinsured motorist policy. Now that his daughter Pamela has already recovered to the limit of her own underinsured motorist policy, she seeks benefits for which she has not paid. She has presented no evidence, however, that Nationwide factored in the risk of her having an accident with an uninsured motorist when it calculated Arthur's premium. Indeed, we may presume that it did not, as Pamela's insurance policy was issued months after Arthur's policy. Voiding the exclusion clause would therefore allow Pamela added underinsured policy recoveries, and force Nationwide to pay for items not factored into its risk calculations.

Id. at 810.

Here, as in Paylor, Riley, Colbert and Linder, the policies upon which Sharon Galloway seeks to recover in her capacity as administrator of her son's estate each list her as the named insured. To permit recovery in this case would enable the Galloways to recover a windfall by receiving benefits greatly in excess of those for which they had paid. Such a result would be flatly inconsistent with

10

the legislative purpose of the MVFRL of curtailing the "the spiraling consumer cost of automobile insurance." See Paylor, 640 A.2d at 1235-36. The enforcement of the family car exclusion, under these circumstances, does not violate public policy. An appropriate order follows.

### IV. Conclusion

For the reasons stated above, Plaintiff's motion for summary judgment is granted. Defendant's motion for summary judgment is denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PROGRESSIVE DIRECT )
INSURANCE COMPANY, )
                                           )
       Plaintiff, )
                                           )
                       v. )           Civil Action No. 08-38 Erie
                                           )
SHARON M. GALLOWAY, Administrator )    Judge Sean J. McLaughlin
of the ESTATE OF STEVEN D. )
GALLOWAY, deceased. )
                                           )
       Defendant. )

## **ORDER**

AND NOW, this 17th day of March, 2009, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Motion for Summary Judgment of Defendant Sharon M. Galloway is DENIED. The Motion for Summary Judgment of Plaintiff Progressive Direct Insurance Company is GRANTED. Judgment is entered in favor of Plaintiff and against Defendant. This matter is dismissed.

                                                             /s/ Sean J. McLaughlin
                                                            United States District Judge

cm: All parties of record. ___